IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| BISHARA THOMAS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:15-cv-108-RJD |
| WEXFORD HEALTH SOURCES, INC., STEVE RITZ, JOHN TROST, and JEFF HUTCHINSON, | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Bishara Thomas, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action under 42 U.S.C. §1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center. In particular, Plaintiff alleges he has been denied adequate medical treatment for his hiatal hernia, causing him to suffer severe abdominal pain and bloating. Plaintiff is proceeding on an Eighth Amendment deliberate indifference claim against Dr. John Trost, Dr. Steve Ritz, and Wexford Health Sources, Inc. ("Wexford"). Defendant Jeff Hutchinson, the current warden at Menard, is named in his official capacity to carry out any injunctive relief, if necessary.

This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Dr. Trost, Dr. Ritz, and Wexford (Doc. 129), and the Motion for Summary Judgment filed by Defendant Hutchinson[1] (Doc. 131). For the reasons set forth below, the Motion filed by

---
[1] Jacqueline Lashbrook was the Warden of Menard at the time Defendant's motion was filed; accordingly, it was filed in her name. However, since the filing of Defendant's motion, Jeff Hutchinson was substituted for Jacqueline Lashbrook pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Dr. Trost, Dr. Ritz, and Wexford is **GRANTED IN PART AND DENIED IN PART**, and the Motion filed by Hutchinson is **DENIED**.

### Factual Background[2]

Bishara Thomas has been incarcerated at Menard Correctional Center since 2005 (Deposition of Bishara Thomas, Doc. 130-5, p. 2). Since 2009, Thomas has suffered chronic, severe pain, which he describes as tightness or pressure in the upper area of his stomach, as well as pain and constipation in his lower abdomen (*Id.* at 3, 21). By 2013 or 2014, the pain intensified, rising to about a ten on a ten-point scale (*Id.* at 3).

Thomas first reported complaints of stomach pain and constipation on November 4, 2009 during a visit to Nurse Sick Call (Deposition of Dr. Trost, Doc. 136-2, p. 17; *see* Plaintiff Thomas' Medical Records, Doc. 130-1, pp. 1-2). The nurse did not refer Thomas to a physician, but provided him with Metamucil and Maalox and ordered that he be on a twenty-four hour liquid diet (*Id.*). Throughout the remainder of 2009 and 2010 Thomas was regularly evaluated for complaints of abdominal pain (Doc. 136-2 at 18-20; *see* Doc. 130-1 at 3-14). Thomas underwent laboratory testing and x-rays of his chest and abdomen, and received prescriptions for Bentyl, a medication used to treat bowel problems, Milk of Magnesia, a laxative and antacid, and Colace, a stool softener used to treat constipation (*Id.*). There is no evidence demonstrating any treatment or evaluation of Thomas' complaints in 2011.

Thomas was seen on May 27, 2012 for complaints of abdominal pain during Nurse Sick Call (Doc. 136-2 at 20; *see* Doc. 130-1 at 15). Thomas was seen for similar complaints of pain

---

[2] In reviewing the record, the Court views and recites the facts in the light most favorable to Plaintiff Thomas. *Anderson v. Donhaoe*, 699 F.3d 989, 994 (7th Cir. 2012). It must reasonably resolve all factual disputes in Thomas' favor. *Id.*

throughout 2013, for which he received a prescription for Zantac, a medication used to block the release of acid into the stomach, Milk of Magnesia, Fibercon, a laxative used to treat constipation, and Protonix, a protein pump inhibitor used to treat Gastroesophageal reflux disease ("GERD") (Doc. 136-2 at 20-24; *see* Doc. 130-1 at 16-38).

Defendant Dr. Trost, the Medical Director at Menard, first saw Thomas on December 30, 2013, wherein Thomas complained of epigastric pain (Affidavit of John Trost, M.D., Doc. 130-2, ¶¶ 2, 5; *see* Doc. 130-1 at 39). Dr. Trost conducted a physical examination and found Thomas' abdomen was flat, soft, and non-tender; however, he referred Thomas for an ultrasound of his gallbladder for further evaluation (Doc. 130-2 at ¶ 5; *see* Doc. 130-1 at 39). The ultrasound referral was approved and it was completed on February 6, 2014 (*see* Doc. 130-1 at 40-42). The ultrasound findings were normal and there was no evidence of cholelithiasis or cholecystitis (Doc. 130-2 at ¶ 6; *see* Doc. 130-1 at 42).

Thomas was again evaluated for complaints of abdominal pain or pressure on March 12 and March 15, 2014 (Doc. 130-2 at ¶¶ 7-8; *see* Doc. 130-1 at 43-45). On March 15, 2014, a non-party physician conducted a physical examination that was unremarkable and issued Thomas a prescription for Reglan, a medication used to treat complaints of heartburn, nausea and vomiting, and Zantac (Doc. 130-2 at ¶ 8; *see* Doc. 130-1 at 45). After Thomas followed-up again with a nurse on April 17, 2014, he was referred to Dr. Trost for another evaluation (Doc. 136-2 at 25).

Dr. Trost conducted a physical examination of Thomas on April 23, 2014 (Doc. 130-2 at ¶ 9; *see* Doc. 130-1 at 46). His assessment was that of peptic ulcer disease or gastritis (Doc. 136-2 at 25; *see* Doc. 130-1 at 46). Dr. Trost ordered a stool check for the Helicobacter pylori ("H. Pylori") antigen, and prescribed Thomas Protonix (Doc. 130-2 at ¶ 9; *see* Doc. 130-1 at 46). Thomas was to return in two weeks (*Id.*).

Thomas agreed to provide a stool sample for the H. Pylori screen on May 28, 2014 (Doc. 130-2 at ¶ 11; *see* Doc. 130-1 at 48). The results of the screening were negative (Doc. 130-2 at ¶ 11; *see* Doc. 130-1 at 49).

Thomas was not seen again for complaints of abdominal pain and related symptoms until July 23, 2014, although he was regularly seen in the interim for other conditions (Doc. 130-2 at ¶¶ 12-21; *see* Doc. 130-1 at 50-65). After performing an unremarkable physical examination on July 23, 2014, the nurse issued Thomas a prescription for Prilosec (Doc. 130-2 at ¶ 21; *see* Doc. 130-1 at 65). Thomas saw the same nurse again on September 3, 2014, complaining of epigastric distress and heartburn (Doc. 130-2 at ¶ 5; *see* Doc. 130-1 at 65). The nurse ordered an x-ray of Thomas' abdomen, an updated H. Pylori screening, and prescribed him Milk of Magnesium and Fibercon (Doc. 130-2 at ¶ 23; *see* Doc. 130-1 at 65). The abdominal x-ray revealed a mild degree of stool in the colon and non-specific distention in the loops of the small bowel, which could indicate early ileus, or intestinal obstruction (Doc. 130-2 at ¶ 24; *see* Doc. 130-1 at 67). During his follow-up visit on September 5, 2014, the nurse ordered a comprehensive metabolic panel ("CMP"), complete blood count ("CBC"), and an updated H. Pylori screening (Doc. 130-2 at ¶ 25; *see* Doc. 130-1 at 68). The blood testing produced unremarkable results, including a negative screening for H. Pylori (Doc. 130-2 at ¶ 25; *see* Doc. 130-1 at 69-70).

Thomas saw Dr. Trost again on September 17, 2014, to address his complaints of epigastric pain (Doc. 130-2 at ¶ 26; *see* Doc. 130-1 at 71). Dr. Trost conducted a physical examination and diagnosed Thomas with non-specific abdominal pain (*Id.*). Dr. Trost issued Thomas a prescription for Prilosec and Colace and requested that he return for re-examination in six weeks (*Id.*). During his follow-up exam with Dr. Trost on October 29, 2014, Thomas continued to complain of epigastric pain with some nausea, and reported the Prilosec was ineffective (Doc.

130-2 at ¶ 29; *see* Doc. 130-1 at 74). Dr. Trost again assessed Thomas as suffering from non-specific abdominal pain and issued Thomas a prescription for Lactulose, a laxative used to treat constipation (*Id.*). Dr. Trost referred Thomas to collegial for referral to receive a CT scan of his abdomen and for examination by a gastrointestinal specialist (*Id.*).

Dr. Trost presented Thomas' case in collegial on October 30, 2014 to Dr. Ritz, Wexford's Corporate Utilization Management Director (Doc. 130-2 at ¶ 30; *see* Doc. 130-1 at 75). Dr. Ritz did not authorize the referrals, indicating that more information was needed before an outside consultation could be considered (Doc. 130-2 at ¶ 30; *see* Doc. 130-1 at 75-76). Dr. Trost's proposed referrals were again discussed with Dr. Ritz during collegial on November 6, 2014 (Doc. 130-2 at ¶ 31; *see* Doc. 130-1 at 77-78). During collegial, Thomas' recent bloodwork and weight were discussed (*Id.*). Dr. Ritz did not approve the request for a CT scan or evaluation with a gastrointestinal specialist; rather, he recommended that Thomas continue to receive conservative treatment onsite (*Id.*). An x-ray of Thomas' abdomen was taken on November 7, 2014, which revealed a moderate degree of stool in the colon (Doc. 130-2 at ¶ 32; *see* Doc. 130-1 at 80). The distention of the bowel loops identified in Thomas' previous x-ray had resolved (*Id.*). Further, Thomas underwent fecal blood testing on November 19, 2014, the results of which were negative (Doc. 130-2 at ¶ 33; *see* Doc. 130-1 at 82).

Thomas continued to see medical personnel throughout 2015 for varying complaints of abdominal pain, nausea, vomiting, heartburn, and indigestion (Doc. 130-2 at ¶¶ 38-39, 42-44; *see* Doc. 130-1 at 87-90, 96-99). On October 23, 2015, Dr. Trost examined Thomas for complaints of chronic constipation and generalized abdominal pain (Doc. 130-2 at ¶ 45; *see* Doc. 130-1 at 100). Dr. Trost issued Thomas a prescription for Fibercon, Colace, Lactulose, and Prilosec, and referred him to collegial to again consider a CT scan of his abdomen (Doc. 130-2 at ¶ 45; *see* Doc. 130-1 at

100-01). The CT referral was discussed in collegial with Dr. Ritz, who requested additional information, including the results of Thomas' February 6, 2014 gallbladder ultrasound (Doc. 130-2 at ¶ 46; *see* Doc. 130-1 at 102-03). Once the additional information was obtained, the CT request was approved and a CT scan of Thomas' abdomen and pelvis was taken on January 12, 2016 (Doc. 130-2 at ¶¶ 46-47; *see* Doc. 130-1 at 104-06). The results were unremarkable and there was no acute abnormality detected (Doc. 130-2 at ¶ 47; *see* Doc. 130-1 at 105-06).

On February 9, 2016, Thomas again presented to Dr. Trost complaining of abdominal pain in the epigastric area (Doc. 130-2 at ¶ 48; *see* Doc. 130-1 at 107). Dr. Trost referred Thomas to collegial for an esophagogastroduodenoscopy ("EGD"), which was approved (Doc. 130-2 at ¶¶ 48-49; *see* Doc. 130-1 at 109-10). The EGD was performed at Touchette Regional Hospital on May 6, 2016 (Doc. 130-2 at ¶ 50-51; *see* Doc. 130-1 at 112-16). The EGD was performed by Dr. Leyland Thomas, a gastroenterologist, who diagnosed Thomas with a hiatal hernia (*Id.*). A hiatal hernia is the budging of a part of the stomach through the diaphragm and into the chest region (Doc. 130-2 at ¶ 51). Dr. Thomas recommended that Thomas continue current management with consideration of a trial of Bentyl (*Id.*). At the time of Dr. Thomas' recommendation, current management of Thomas' condition consisted of the use of the proton pump inhibitor, antacids, Bentyl, Reglan, H2 blockers, and tests for H. pylori (Doc. 136-2 at 31-32).

Dr. Trost met with Thomas on May 13, 2016 to discuss the results of the EGD (Doc. 130-2 at ¶ 52; *see* Doc. 130-1 at 117). Dr. Trost issued Thomas a prescription for Prilosec and ordered an updated KUB test (*Id.*). Dr. Trost did not issue Thomas a prescription for Bentyl as he had been prescribed Bentyl in the past and reported it did not provide him with any relief (Doc. 130-2 at ¶ 52).

Thomas saw nurse practitioner Moldenhauer on July 1, 2016, at which time he complained

of constant upper chest pain, nausea, and a bad taste in his mouth (Doc. 130-2 at ¶ 56; *see* Doc. 130-1 at 122). Thomas reported that the medications he was currently taking were not providing him any relief (*Id.*). Moldenhauer referred Thomas to Dr. Trost for further evaluation (*Id.*). Dr. Trost examined Thomas on July 7, 2016 (Doc. 130-2 at 57; *see* Doc. 130-1 at 122). Thomas reported that the Prilosec was not working, and Dr. Trost issued him a prescription for Mintox, a medication used to treat complaints associated with stomach acid including heartburn, indigestion, and gas (Doc. 130-2 at ¶ 57; *see* Doc. 130-1 at 122). On August 22, 2016, Dr. Trost resubmitted a request to collegial to refer Thomas for an evaluation with a gastrointestinal specialist (Doc. 130-2 at ¶ 59; *see* Doc. 130-1 at 124). Dr. Ritz requested a copy of Thomas' EGD results for review before making a determination (*Id.*). Thomas' case was again discussed in collegial with Dr. Ritz on September 2, 2016 (Doc. 130-2 at ¶ 60). Dr. Ritz reviewed the results of the EGD, denied the referral request, and recommended issuing Thomas a prescription for Prilosec, reviewing Thomas' commissary purchase list with suggestive lifestyle changes, and resubmitting the referral if his condition worsened or continued despite implementation of the recommended treatment plan (Doc. 130-2 at ¶ 60; *see* Doc. 130-1 at 125). Thomas does not recall ever being advised to regulate his diet (Doc. 130-5 at 8).

Thomas saw Dr. Trost on November 10, 2016, wherein he reported continued complaints of chronic constipation (Doc. 130-2 at ¶ 62; *see* Doc. 130-1 at 127). Dr. Trost ordered blood work, including a CMP and CBC, and referred Thomas to collegial for consideration of a colonoscopy (*Id.*). Dr. Trost's referral request was discussed with Dr. Ritz in collegial on November 18, 2016, and Dr. Ritz requested the results of the May 2016 KUB study and Thomas' recent bloodwork for review (Doc. 130-2 at ¶ 63; *see* Doc. 130-1 at 129). Thomas' laboratory testing was completed on November 18, 2016, and the results were unremarkable, with all signs

within normal limits (Doc. 130-2 at ¶ 64; *see* Doc. 130-1 at 130).

Thomas was seen on February 1, February 8, and March 6, 2017, for complaints of stomach pain and constipation (Doc. 130-2 at ¶¶ 66-68; *see* Doc. 130-1 at 134-136). After his examination with Moldenhauer on March 6, 2017, Dr. Trost submitted a request for a referral for a gastrointestinal consult to collegial (Doc. 130-2 at ¶ 69; *see* Doc. 130-1 at 137-38). Dr. Ritz denied the referral request, recommending that Thomas be issued a prescription for Gaviscon, an antacid used to treat heartburn and indigestion, and receive another ultrasound of his gallbladder (*Id.*). An updated ultrasound of Thomas' gallbladder was taken on April 4, 2017, and the results were normal (Doc. 130-2 at ¶ 70; *see* Doc. 130-1 at 139). Thomas continues to suffer abdominal pain, constipation, heartburn, and epigastric pain, and has received proton pump inhibitors and medications typically used for the treatment of reflux and GERD (*see* Doc. 130-1 at 140-166).

**Legal Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). The Seventh Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## Discussion

Thomas alleges that Defendants Drs. Trost and Ritz acted with deliberate indifference, in violation of the Eighth Amendment, by pursuing ineffective treatments and refusing to approve a referral to a gastrointestinal specialist. The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first element, the following circumstances constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.

1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Defendants do not argue that Plaintiff's medical condition fails to meet the objective requirement of a "serious medical need." Accordingly, the Court finds that this point has been conceded and will only consider whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

1. **Dr. John Trost**

Dr. Trost contends that he provided Thomas adequate care according to his medical skill, training, and experience, to address his hiatal hernia. The Court disagrees. As mentioned above, "[a]lthough it is true that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference … to prevail on an Eighth Amendment claim 'a prisoner is not required to show that he was literally ignored'." *Greeno v. Daley*, 414 F.3d 645

(7th Cir. 2005) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) (other citations omitted). Indeed, "a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (quoting *Estelle v. Gamble*, 429 U.S. 87, 104, n.10 (1976) (other citations omitted).

 Here, Dr. Trost evaluated Thomas' complaints of abdominal pain, constipation, and heartburn for more than three years. Despite the persistence of his complaints, and the failure of various medications to abate Thomas' pain and associated symptoms, Dr. Trost failed to change treatment regimens, ensure an evaluation by a gastroenterologist, or consider Thomas for surgical repair of his hiatal hernia. Indeed, Dr. Trost prescribed Prilosec on at least four occasions, despite being advised by Thomas that the medication was ineffective. As espoused by the Seventh Circuit in *Greeno v. Anderson*, persistence in a course of treatment known to be ineffective may violate the Eighth Amendment. 414 F.3d 645, 655 (7th Cir. 2005) (finding that a genuine issue of material fact existed as to whether physician was deliberately indifferent to prisoner's deteriorating medical condition by continuing to persist with course of treatment that had been ineffective); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"). Thomas has presented some evidence that his condition and ongoing complaints required additional treatment, including surgical repair of his hiatal hernia. In particular, Dr. Thomas testified that surgical repair of a hiatal hernia may be indicated when acid reflux cannot be managed through medication (Deposition of Dr. Leyland Thomas, Doc. 136-4, p. 7). Also, while the Court recognizes that Dr. Trost submitted a request for a referral to a gastrointestinal specialist in 2014 and 2016, his efforts were clearly not sufficient to address Thomas' ongoing complaints.

Based on Thomas' medical history and continued complaints of abdominal pain, a jury could find that Dr. Trost doggedly persisted in a course of treatment that was ineffective, resulting in significant pain. Accordingly, there is a genuine issue of material fact in this case, which precludes summary judgment on the merits as to Dr. Trost.

   2. **Dr. Stephen Ritz**

Dr. Ritz asserts that he was not deliberately indifferent in failing to approve Thomas for evaluation with a gastrointestinal specialist because it was not medically necessary to address his complaints. In particular, Dr. Ritz contends there is no objective evidence contained in the medical records to support Thomas' allegations as his physical examinations and other testing were consistently normal. Moreover, Dr. Ritz contends that Thomas' complaints are inconsistent with the medical findings insofar as Dr. Thomas found that his esophageal mucosa was without irritation or inflammation, inconsistent with complaints of longstanding or severe acid reflux or GERD (Doc. 130-6 at 17-18). For these reasons, Dr. Ritz asserts that a referral to a specialist was not necessary because Thomas' complaints could be effectively managed onsite at Menard. The Court disagrees. When crediting the evidence in the light most favorable to Thomas, as the Court must do here, there is clearly a question of fact as to whether Thomas' condition was effectively and adequately managed onsite. Thomas complained of persistent abdominal pain and related issues for over five years. Despite the ongoing nature of his complaints, and failure of treatment regimens to abate the same, Dr. Ritz persisted in a conservative, onsite treatment that a jury could conclude was ineffective. Accordingly, there is a genuine issue of material fact as to whether Thomas' condition was adequately treated, precluding summary judgment as to Dr. Ritz.

   3. **Wexford Health Sources, Inc.**

In his Amended Complaint, Thomas alleged that Wexford failed to institute proper policies

and procedures at Menard to ensure he received sound medical care. Based on Thomas' opposition briefing and the evidence in the record, it appears he has amended his allegations and now contends that Wexford was deliberately indifferent to his medical condition due to deficiencies in staffing[3].

Where a private corporation has contracted to provide essential government services, such as health care for prisoners, the private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Plaintiff to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Shields*, 746 F.3d at 796. Plaintiff must also show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). Finally, a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted).

Here, Thomas has presented some evidence that there were deficiencies in staffing at Menard[4]. The record, however, is devoid of any indication that such deficiencies affected Thomas' care. Indeed, there is no allegation that Thomas was met with any significant delays in

---

[3] The Court will consider Plaintiff's arguments despite the change in his theory as "the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence." *Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996). Moreover, Defendant filed a reply brief to respond to Plaintiff's argument.

[4] Dr. Trost testified that he raised staffing concerns to his superiors, but, even at the time he left Menard, it was not fully staffed (Doc. 136-2 at 13).

receiving treatment or being evaluated by medical personnel. Indeed, the record appears to reflect the opposite — that Thomas was timely seen after presenting with complaints of abdominal pain. Accordingly, Wexford's Motion for Summary Judgment is granted.

### 4. Warden Jeff Hutchinson

Warden Hutchinson contends summary judgment in his favor is warranted on the basis of sovereign immunity. More specifically, Hutchinson argues that the evidence establishes that he has not, and is not, engaging in any specific conduct impinging on the medical treatment of Thomas and, as such, he is immune from suit. Defendant's argument is without merit. As he acknowledges, the Seventh Circuit held, in *Gonzalez v. Feinerman*, that a warden is a proper defendant when an inmate seeks injunctive relief. 663 F.3d 311, 315 (7th Cir. 2011). Although the procedural posture of *Gonzalez* may be distinguishable from the case at bar, Hutchinson has not convinced the Court that the decision is not applicable here. Warden Hutchinson is the representative of the IDOC who has custody over Thomas. Thereby, he is the individual charged with carrying out any injunctive relief, if necessary.

### Conclusion

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment filed by Defendants Dr. Trost, Dr. Ritz, and Wexford (Doc. 129), and **DENIES** the Motion for Summary Judgment filed by Defendant Hutchinson (Doc. 131). At the conclusion of the case, the Clerk of Court **SHALL ENTER JUDGMENT** against Plaintiff Thomas and in favor of Defendant Wexford Health Sources, Inc.

This matter shall proceed on a claim of deliberate indifference against Drs. Trost and Ritz. Warden Hutchinson is a defendant in his official capacity only.

**IT IS SO ORDERED.**

**DATED: April 3, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**